*ENV p drive
2/1/21

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------------------------------------- x

MDG REAL ESTATE GLOBAL LIMITED and        :
MDG REAL ESTATE GLOBAL LLC,               :
                                          :          MEMORANDUM & ORDER
                          Plaintiffs,     :
                                          :            19-cv-4532 (ENV) (PK)
          -against-                       :
                                          :
BERKSHIRE PLACE ASSOCIATES, LP and        :
BERKSHIRE PLACE, LTD.                     :
                                          :
                          Defendants.     :

--------------------------------------------------------------- x

VITALIANO, D.J.

  Plaintiffs MDG Real Estate Global Limited and MDG Real Estate Global LLC (together,

"MDG") bring this action against defendants Berkshire Place Associates, LP and Berkshire

Place, LTD (together, "Berkshire").  MDG seeks to vacate an arbitration award arising from a

real estate sales contract dispute between the parties and to enjoin Berkshire from confirming the

same in parallel litigation in the District of Rhode Island.  Berkshire moves to dismiss or, in the

alternative, transfer, reciting a potpourri of grounds.  The District of Rhode Island has stayed its

proceedings pending the resolution of this motion.  For the reasons that follow, in the absence of

personal jurisdiction over defendants, the action is ordered transferred, in the interests of justice

and convenience, to the District of Rhode Island.

1

Background[1]

On February 22, 2018, MDG entered into an agreement with Berkshire to purchase the

Berkshire Place Nursing Home facility in Providence, Rhode Island.  Compl., Dkt. 1-1, ¶¶ 3, 8.

MDG conducts its business in New York, and has offices in Manhattan, Queens and Brooklyn.

*Id.* ¶ 1.  Berkshire is a Rhode Island entity with offices in or around Providence.  *Id.* ¶ 2.

MDG terminated the agreement and Berkshire began arbitration proceedings before the

American Arbitration Association, claiming that MDG's termination was improper and that

Berkshire was therefore entitled to retain the $1,400,000 escrow deposit it made when the parties

entered into the agreement.  *Id.* ¶¶ 4, 12.  The arbitration panel found that MDG breached its

contractual obligations and awarded Berkshire the full escrow deposit.  *Id.* ¶¶ 13, 15.  The

deposit is held by Riverside Abstract, LLC (the "Escrow Agent").  *Id.* ¶ 4.  The Escrow Agent's

offices are in Brooklyn, as is the bank that presently holds the deposit.  *Id.* ¶¶ 4–6.

MDG now alleges that the arbitration panel enforced "extracontractual obligations" that

ran contrary to the plain terms of the agreement.  *Id.* ¶ 14.  It contends that its termination of the

---

[1] The facts are taken from plaintiffs' complaint.  All facts alleged in plaintiffs' pleadings are deemed to be true, and all reasonable inferences are drawn in their favor.  *Vietnam Ass'n of Agent Orange v. Dow Chem. Co.*, 517 F.3d 104, 115 (2d Cir. 2008).

agreement was timely and proper, and that the arbitration panel's award was arbitrary and capricious. *Id.* ¶¶ 11, 22.

Procedural History

The litigation history of this case is complex and the subject of multiple disputes among the parties. Because only the questions of personal jurisdiction and venue will be addressed, it is unnecessary to recount the entire chronology of filings across the various courts.

Ordinarily, under the rules of civil practice in New York, a civil action will be commenced by the filing of a summons and complaint. N.Y. C.P.L.R. § 304. The rules also provide for a streamlined process, used by plaintiffs here, so that, on July 3, 2019, MDG filed a two-page notice-and-summons to initiate this action in state court. Dkt. 1-1, at 2–3. On August 5, 2019, MDG filed its complaint. *Id.* at 4–8. The next day, Berkshire removed the action to this Court. Dkt. 1.

Meanwhile, on July 9, 2019, Berkshire initiated its action to confirm the arbitration award in Rhode Island state court. Elovecky Decl. Ex. B, Dkt. 10-2, at 10–15. On August 14, MDG removed that action to the District of Rhode Island. *Id.* at Ex. D, 115. On January 31, 2020, the District of Rhode Island stayed Berkshire's motion to confirm the award until this Court, as the

one with the first-filed action, had an opportunity to determine the proper venue.  Defs.' Reply

Ex. A, Dkt. 12, at 11–25.

## Discussion

I.      Personal Jurisdiction

Berkshire challenges jurisdiction, moving to dismiss the case under Federal Rule of Civil

Procedure 12(b)(2).  Defs.' Mem., Dkt. 10-1, at 14–16.   Not only did MDG fail to respond to

this part of Berkshire's motion, the complaint describes Berkshire as a Rhode Island entity,

setting its opposition to the motion off with a shaky start.  *See* Pl.'s Opp'n Mem., Dkt. 11;

Compl. ¶¶ 2–6.

At any rate, it is hornbook law that the burden rests with plaintiffs to establish the Court's

personal jurisdiction over defendants.  *See Troma Entm't, Inc. v. Centennial Pictures Inc.*, 729

F.3d 215, 217 (2d Cir. 2013).  Then, when considering a motion to dismiss for lack of personal

jurisdiction, the district court may rely on pleadings and affidavits or conduct an evidentiary

hearing.  *See CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 364 (2d Cir. 1986).  Where, as here,

the motion court relies on pleadings and affidavits, plaintiffs must make a *prima facie* showing

of personal jurisdiction.  *Id.*  In other words, plaintiffs may defeat a jurisdiction-testing motion

"'by pleading in good faith, legally sufficient allegations of jurisdiction.'"  *Dorchester Fin. Sec.,*

*Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (quoting *Ball v. Metallurgie Hoboken-*

*Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990)).  Tellingly, on the instant motion, only

defendants have submitted affidavits.  *See* Elovecky Decl. at 1–2; *id.* at Ex. F ("Rotella Decl."),

at 122–24.  But, at this stage, the Court may evaluate only the plaintiffs' submissions.  *Henkin v.*

*Gibraltar Priv. Bank & Tr. Co.*, No. 16-CV-5452 (LDW), 2018 WL 557866, at *2 (E.D.N.Y.

Jan. 22, 2018) (quoting *Dorchester*, 722 F.3d at 86).

Diversity cases bring their own yardstick to determine whether the court has acquired *in*

*personam* jurisdiction to hear the case.  It is straightforward in concept: personal jurisdiction is

determined in accordance with the laws of the forum state, subject to federal due process

constraints.  *Nautilus Ins. Co. v. Adventure Outdoors*, Inc., 247 F.R.D. 356, 358 (E.D.N.Y. 2007)

(citing *Savin v. Ranier*, 898 F.2d 304, 306 (2d Cir. 1990)).  Drilling down on this motion, New

York's jurisdictional statutes provide for both general and specific personal jurisdiction.[2]  *See*

N.Y. C.P.L.R. §§ 301–302.  With respect to specific jurisdiction, "the plaintiff's cause of action

must arise out of defendant's contacts with the state which, although not substantial, satisfy the

state's long arm statute."  *Nautilus Ins. Co.*, 247 F.R.D. at 359 (citing N.Y. C.P.L.R. § 302).

---

[2] General jurisdiction is plainly inapplicable here.  A corporation is subject to general jurisdiction
only where it is "essentially at home."  *Daimler AG v. Bauman*, 571 U.S. 117, 122, 134 S. Ct.
746, 751, 187 L. Ed. 2d 624 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*,
564 U.S. 915, 919, 131 S. Ct. 2846, 2851, 180 L. Ed. 2d 796 (2011)).  The Second Circuit has
held that "except in a truly 'exceptional' case, a corporate defendant may be treated as
'essentially at home' only where it is incorporated or maintains its principal place of business."
*Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016).  MDG has not asserted any
basis for the Court to exercise general jurisdiction over Berkshire.  As a "foreign" entity that is
neither incorporated nor maintains its principal place of business in New York, Berkshire is
simply not subject to general jurisdiction in this state.

New York's long arm statute, in turn, allows courts to exercise personal jurisdiction over an out-of-state defendant who "transacts any business within the state or contracts anywhere to supply goods or services in the state"; "commits a tortious act" within the state or, in certain circumstances, outside the state; or "owns, uses or possesses any real property situated within the state." N.Y. C.P.L.R. § 302(a) (McKinney 2019).[3]

Returning to MDG's complaint, which is its only submission alleging any facts that could support an exercise of jurisdiction, it is apparent that personal jurisdiction over Berkshire is lacking. The shaky start begets a losing finish. MDG alleges that Berkshire is a "foreign" entity, incorporated in Rhode Island and with offices there. Compl. ¶ 2. That is its *sole* allegation spelling out Berkshire's non-existent relationship to the forum state. Struggling to regain its footing, MDG opts to focus instead on the Escrow Agent's and escrow deposit's connection to New York—that both are located in Brooklyn. Compl. ¶¶ 4–6. But the Escrow Agent is not a defendant nor even a named party in this case. *See, e.g.*, *Boyce v. Cycle Spectrum, Inc.*, 148 F.

---

[3] If, and only if, a plaintiff meets these jurisdictional requirements, he must then show that exercising personal jurisdiction over the defendant will not violate the Constitution's due process clause. This analysis requires that the defendant have sufficient "minimum contacts" with the forum state and that the exercise of jurisdiction is reasonable under the circumstances. *See generally Int'l Shoe Co. v. Washington*, 326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945).

6

Supp. 3d 256, 264–66 (E.D.N.Y. 2015) (describing the long arm statute's applicability to

defendants only).[4]

A closer examination is not helpful to MDG's case. Only CPLR § 302(a)(1), conferring

jurisdiction over a defendant who "transacts any business within the state or contracts anywhere

to supply goods or services in the state" appears remotely relevant, and it is clear that the

provision does not salvage MDG's claim. First, a comparison to *Levans v. Delta Airlines, Inc.* is

illustrative. 988 F. Supp. 2d 330 (E.D.N.Y. 2013). Plaintiffs there, unlike here, sued one

defendant that was plausibly subject to the court's personal jurisdiction (Delta Airlines) and one

defendant that ultimately was not (Roraima Airlines). *Id.* at 332–34. To establish that Roraima

"transacted business in New York, plaintiff relie[d] primarily on the relationship between

*Roraima and Delta*," such as their agreements regarding the handling of New York residents'

luggage and the managing of regulatory compliance. *Id.* at 335 (emphasis added). Finding that

such agreements did not amount to Roraima transacting business in New York, and observing

that this analysis typically deals with contracts "*between a plaintiff and a defendant*," the court

concluded that the fact "[t]hat Delta may transact business in New York does not confer

jurisdiction over Roraima." *Id.* at 336 (emphasis in original). Applying this reasoning to the

instant dispute, the fact that Berkshire contracted with a New York-based Escrow Agent does

---

[4] Nothing in any of the pleadings suggests either party has a claim against the Escrow Agent. Presumably, if MDG was intent on staying in state court, had it a hint of a claim against the Escrow Agent, it could have named it as a defendant and destroyed diversity.

not, without more, establish that Berkshire transacted business in New York, nor does it support

*in personam* jurisdiction over Berkshire in this action.

Second, to base jurisdiction on a contract negotiated entirely outside the forum state by a

non-domiciliary, as is the case here, "the contract must be to send goods [or services] specifically

into New York." *Boyce*, 148 F. Supp. 3d at 264 (quoting Korn & Miller, et al., New York Civil

Practice: CPLR ¶ 302.10 (David L. Ferstendig ed., LexisNexis Matthew Bender 2d Ed.)).  MDG

has not alleged the existence of such a contract, nor can it.

The presence of the Escrow Agent in New York is a dry hole for another reason.  First

off, the funds were deposited into the New York escrow account by MDG, not Berkshire.

Compl. ¶ 9.  Even if Berkshire had deposited the funds, however, that deposit alone would not

have conferred jurisdiction over Berkshire.  Courts have held that "mere payment into a New

York [bank] account does not alone provide a basis for New York jurisdiction," especially where

the remaining aspects of the transaction occur outside New York.  *Pramer S.C.A. v. Abaplus Int'l*

*Corp.*, 76 A.D.3d 89, 96, 907 N.Y.S.2d 154, 159 (2010) (citing *Continental Field Serv. Corp. v.*

*ITEC Intl.*, 894 F. Supp. 151 (S.D.N.Y. 1995)); *see also Baptichon v. Nevada State Bank*, 304 F.

Supp. 2d 451, 458–59 (E.D.N.Y. 2004), *aff'd*, 125 F. App'x 374 (2d Cir. 2005) (citing *CitiBank,*

*N.A. v. Intercontinental Bank*, 169 Misc. 2d 342, 343–44, 646 N.Y.S.2d 261 (N.Y. Sup. 1996)

(no personal jurisdiction where defendant had no connection with New York apart from

transmitting check to New York bank)).  In the course of its efforts to sell MDG its Rhode Island

8

nursing home, Berkshire engaged in no other ongoing business transactions or contacts in New

York, at least as MDG's pleadings tell of.  Consequently, the Court is without personal

jurisdiction over Berkshire.  What remains is whether the case should be dismissed or

transferred.


II.     Transfer

        A court may transfer a case from one proper venue to another even if it lacks personal

jurisdiction over the defendant, provided that transfer is convenient to the parties and is in the

interests of justice.  *See* 28 U.S.C. § 1404(a); *Ducatel v. Manspeizer*, No. 08-CV-4219 (JG)

(VVP), 2009 WL 648521, at *2 (E.D.N.Y. Mar. 13, 2009); *Henkin*, 2018 WL 557866, at *4.

Accordingly, the choice between dismissal and transfer is keyed to a determination as to whether

each of the competing forums has proper venue and whether a transfer would be convenient and

in the interests of justice.[5]

---

[5] Given the active proceeding in the District of Rhode Island, both MDG and Berkshire spend much of their briefing contesting who filed its action first.  The first-to-file rule, as it is known, carries with it a presumption of deference—that the forum in which the first action is filed is the favored forum in which to proceed.  *See Blechman*, 668 F. Supp. 2d at 404.  But this rule exists only where two courts have "concurrent jurisdiction" over an action involving the same parties and issues.  *Am. Steamship Owners Mut. Prot. and Indem. Ass'n, Inc. v. Lafarge N. Am., Inc.*, 474 F. Supp. 2d 474, 481 (S.D.N.Y. 2007).  Because this Court lacks personal jurisdiction over Berkshire, it does not hold concurrent jurisdiction with the District of Rhode Island.  Moreover, the first-to-file rule holds minimal, if any, sway when the timespan between the two filings is as short as it is here—six days—even if MDG's notice-and-summons was sufficient to initiate suit, which the parties dispute.  *See, e.g.*, *Blechman*, 668 F. Supp. 2d at 405 (E.D.N.Y. 2009); *Columbia Pictures Indus., Inc. v. Schneider*, 435 F. Supp. 742, 747 (S.D.N.Y. 1977), *aff'd*, 573 F.2d 1288 (2d Cir. 1978) ("[It would create disincentives to responsible litigation if [plaintiff] were allowed to prevent [defendants] from litigating in the forum of their choice by having won

First, venue is proper in this district as a matter of law.  Contrary to Berkshire's

arguments, proper venue for this action is governed by the removal statute, 28 U.S.C. § 1441(a),

and not by the conventional venue statute, 28 U.S.C. § 1391, which applies only to actions

originally brought in federal courts.  *See Excellent Home Care Servs., LLC v. FGA, Inc.*, No. 13-

CV-5390 (ILG), 2014 WL 652357, at *2 (E.D.N.Y. Feb. 19, 2014); *PT United Can Co. v. Crown*

*Cork & Seal Co.*, 138 F.3d 65, 72 (2d Cir. 1998).  MDG brought its state-court action in Kings

County Supreme Court.  The Eastern District of New York is the federal district "embracing"

that state court, making Berkshire's removal here proper under § 1441(a).  28 U.S.C. § 1441(a).

Thus, venue is proper in this district.

The next part of the inquiry requires two steps: whether Rhode Island is a proper venue,

and whether transferring the case to that court is in the interest of justice, and convenient to the

parties and witnesses.  *See Ducatel*, 2009 WL 648521, at *2; 28 U.S.C. § 1404(a).  Courts have

"broad discretion" to evaluate whether transfer would promote justice and convenience, and

consider such requests "on a case-by-case basis."  *See D.H. Blair & Co., Inc. v. Gottdiener*, 462

F.3d 95, 106 (2d Cir. 2006).  This is true regardless of whether the court has personal jurisdiction

over the defendant.  *See Henkin*, 2018 WL 557866, at *4; *Volk Corp. v. Art–Pak Clip Art Serv.*,

432 F. Supp. 1179, 1181 (S.D.N.Y. 1977).  Courts first determine whether the action could have

---

the race to the courthouse by six days.").  And, even where the first-to-file rule does apply,
transfer to the forum of the later-filed action remains available under § 1404(a).  *Am. Steamship*
*Owners*, 474 F. Supp. 2d at 481.

been brought in the proposed transferee district and must then assess the equitable

considerations.  *See Lauer v. Saybolt LP*, No. 09-CV-3442 (ILG), 2010 WL 1992008, at *2

(E.D.N.Y. May 17, 2010).  Those considerations include:

> (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the
> location of relevant documents and relative ease of access to sources of proof, (4)
> the convenience of parties, (5) the locus of operative facts, (6) the availability of
> process to compel the attendance of unwilling witnesses, [and] (7) the relative
> means of the parties.

*Excellent Home Care Servs., LLC*, 2014 WL 652357, at *3 (quoting *D.H. Blair & Co., Inc.*, 462

F.3d at 106–07) (internal quotation marks omitted).  Further, "courts consistently recognize that

the existence of a related action in the transferee district is a strong factor to be weighed with

regard to judicial economy, and may be determinative."  *Rabbi Jacob Joseph Sch. v. Province of

Mendoza*, 342 F. Supp. 2d 124, 130 (E.D.N.Y. 2004).

As a threshold matter, MDG could have brought this action in the District of Rhode

Island.  Venue is proper in "a judicial district in which any defendant resides, if all defendants

are residents of the State in which the district is located."  28 U.S.C. § 1391(b)(1).  Defendants

are Rhode Island residents, making the District of Rhode Island a proper venue in which to bring

this case.  Compl. ¶ 2.

Moving onto the multi-factor analysis, MDG's choice of forum is the only factor favoring

New York and, as discussed above, that choice was invalid given the Court's lack of personal

jurisdiction over Berkshire.  Neither MDG nor Berkshire indicates the potential involvement of

witnesses in the proceeding to confirm, vacate or modify the arbitration award.  Next, document

location is predominantly "a neutral factor in today's world of faxing, scanning, and emailing

documents."  *Am. Steamship Owners*, 474 F. Supp. 2d at 484.  As to the parties' convenience,

while MDG has voluntarily traveled to and participated in Rhode Island activities, Berkshire has

not had any contacts with MDG in New York.  Rotella Decl. ¶¶ 11–15.  Rhode Island is without

question "the locus of operative facts."  It is the location of the contracted-for Berkshire Place

Nursing Home, the site of all in-person contract negotiations, where the contract was entered into

and the state whose law governs the contract.  *Id.* ¶¶ 10, 15–16; Elovecky Decl. Ex. B at 91.  The

relative means of the parties is also a neutral factor.  Neither party has argued that litigating in

New York or Rhode Island will saddle it with disproportionate costs.  *See MasterCard Int'l Inc.*

*v. Lexcel Solutions, Inc.*, No. 03-CV-7157 (WHP), 2004 WL 1368299, at *7 (S.D.N.Y. June 16,

2004).  Last, the fact that there is already a related proceeding in Rhode Island—one with a fully

briefed motion to confirm the arbitration award—further militates in favor of transfer.  *See Rabbi*

*Jacob Joseph Sch.*, 342 F. Supp. 2d at 130.

At bottom, this is a Rhode Island dispute with a peripheral connection to New York.

Considering all relevant factors, the District of Rhode Island is well positioned to adjudicate the

parties' dispute going forward.  Thus, in the interests of justice, convenience and judicial

economy, the Court orders this action transferred to the District of Rhode Island.

III.    Attorney's Fees

Berkshire seeks attorney's fees pursuant to the Court's inherent powers to assess fees

when a party has acted in bad faith, arguing MDG attempted to delay the proceedings by creating

procedural hurdles.  Defs.' Mem. at 20–22; Defs.' Reply at 8.  "Because of the potency of the

court's inherent power, courts must take pains to exercise restraint and discretion when wielding

it."  *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 136 (2d Cir. 1998).  When awarding

attorney's fees for bad-faith conduct, the Second Circuit requires that district courts find "clear

evidence that the challenged actions are entirely without color and that they were taken for

reasons of harassment or delay or for other improper purposes."  *United States v. Int'l Bhd. of

Teamsters*, 948 F.2d 1338, 1345 (2d Cir. 1991) (internal quotation marks omitted).  This high bar

is evidenced by the fact that, in all the cases Berkshire cites, not one court awarded attorney's

fees for bad-faith conduct.

Here, this exacting standard has not been met.  Even if MDG's claims were "entirely

without color," there is no "clear evidence" indicating that MDG was motivated solely by

harassment, delay or another such improper purpose.  Further, Berkshire's request relies in part

on its argument that MDG made misrepresentations to the District of Rhode Island—a matter

properly raised before that court, not this one.  Defs.' Mem. at 20–21; Defs.' Reply at 8.

13

<u>Conclusion</u>

For the foregoing reasons, defendants' motion to dismiss is granted, to the extent that this

Court finds it lacks personal jurisdiction over defendants and orders the action transferred to the

District of Rhode Island.  Defendants' motion for attorney's fees is denied.

So Ordered.

Dated:  Brooklyn, New York

January 15, 2021

/s/ Eric N. Vitaliano

ERIC N. VITALIANO
United States District Judge

14